IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JARROD EUGENE DIERS,<br><br>    Plaintiff,<br><br>v.<br><br>TED ROBINSON, in his official capacity and individual capacity; DAN FELL, in his official capacity and individual capacity; IOWA DEPARTMENT OF CORRECTIONS; EIGHTH DISTRICT DEPARTMENT OF CORRECTIONS; STATE OF IOWA; LISA HOUK, in her individual capacity; and NYCOLE HARBISON, in her individual capacity,<br><br>    Defendants. | No. 4:24-cv-00110-SHL-HCA<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUGMENT** |

Jarrod Diers brings federal and state law claims arising out of the termination of his probationary employment with a residential correctional facility in the Iowa Department of Corrections ("IDOC"). Because each of his claims suffers from a fatal legal or factual problem (or both), the Court GRANTS Defendants' Motions for Summary Judgment. (ECF 70; ECF 74.) Diers's claims are DISMISSED WITH PREJUDICE.

## I.    UNDISPUTED FACTS.

### A.    Process for Determining Undisputed Facts.

There are two separate groups of Defendants. The first group consists of the Eighth District Department of Corrections (the "Eighth District") and Eighth District employees Dan Fell, Nycole Harbison, Lisa Houk, and Ted Robinson (the "Individual Defendants"). At times, the Eighth District and Individual Defendants will be referred to collectively as the "Eighth District Defendants." The second group consists of the State of Iowa and IDOC (the "State Defendants").

The Eighth District Defendants moved for summary judgment on October 29, 2025. (ECF 70.) Consistent with the Local Rules and Fed. R. Civ. P. 56, the Eighth District Defendants attached a Statement of Undisputed Facts and Appendix. (ECF 70-1; ECF 70-2.) The State Defendants separately moved for summary judgment on October 30, 2025. (ECF 74.) They, too, attached a Statement of Undisputed Facts and Appendices. (ECF 78; ECF 79; ECF 80.) Diers responded to

the State Defendants' Statement of Undisputed Facts. (ECF 83-2.) He did not, however, directly respond to the Eighth District Defendants' Statement of Undisputed Facts. This appears to have been an oversight.[1] In an abundance of caution, the Court treats the facts proffered by the Eighth District Defendants as "undisputed" only insofar as they are (a) supported by Diers's own deposition testimony and interrogatory responses, and (b) not otherwise refuted by Diers's response to the State Defendants' Statement of Undisputed Facts.

   B.   *Undisputed Facts.*

   Diers served in the Army including duty overseas in Iraq from 2007 through 2008 and in Afghanistan in 2010 through 2011. (ECF 84-1, ¶ 2.) Following this service, he joined the Inactive Ready Reserves and was honorably discharged in 2014. (Id., ¶ 3.) He is married and has three children. (Id., ¶ 1.) On April 14, 2023, Diers began part-time employment with the Ottumwa Residential Correctional Facility ("ORCF"). (ECF 83-2, ¶ 1.) At the time of Diers's employment, ORCF was a facility within the Eighth District.[2] (Id., ¶ 2.) Per Eighth District policy, new employees are subject to a twelve-month probationary period. (Id., ¶ 3.) Diers was—and understood himself to be—in this probationary period at the time of the events at issue in this lawsuit. (Id; ECF 70-2, pp. 13, 83.)

   Initially, Diers worked several shifts with his co-worker, Defendant Lisa Houk. He testified that their relationship was "toxic." (Id., p. 86.) On May 15, 2023, there was an incident in which Houk allegedly yelled at Diers and told him people did not like him. (Id., pp. 86, 87; ECF 88, p. 3.) For her part, Houk alleges that the discussion involved her expressing concerns about how Diers was performing his work. (Id.)

   Approximately one week later, on May 22, 2023, Diers alleges that a rumor was circulating at ORCF that he had been sexually intimate with a male inmate. (ECF 84-1, ¶ 5.) He believed that Houk started the rumor, which she denies. (Id., ¶ 6; ECF 70-2, p. 108.) In his deposition, Diers admitted that he did not personally hear Houk spread rumors about him. (ECF 70-2, p. 92.) He nonetheless believed it was her based on information from a co-worker named Jordan Nuno and an inmate named Shawn Shondel. (Id.)

---

[1] During oral argument, Diers's counsel identified "Document 83-2" as the Response to Statement of Undisputed Facts. This is, however, the response to the *State Defendants'* Statement of Undisputed Facts. There is no response on the docket to the Eighth Circuit Defendants' Statement of Undisputed Material Facts.
[2] In 2023, the Iowa Legislature brought the judicial correctional districts under the IDOC. (ECF 83-2, ¶ 2.)

Diers also alleges that Defendant Harbison, a supervisor at ORCF, knew about the rumor but took no action to stop it from circulating even though she knew it was false. (ECF 84-1, ¶ 7.) Diers believed that Harbison knew about the rumor because "[n]othing gets by her. She knows. She knows what's going on in this facility." (ECF 70-2, pp. 92–93.) However, he never had a conversation with Harbison where she said she knew about the rumor, nor did anyone say anything to Diers about having communicated knowledge of the rumor to Harbison. (Id., p. 93.) For her part, Harbison denied knowledge of rumors involving Diers and said she did not spread any such rumors. (Id., pp. 106–07.) Diers testified that he did not know of any inmate, co-worker, or manager who believed the rumor was true. (Id., p. 94.)

On May 24, 2023, the Eighth District initiated a formal investigation into alleged work rule violations by Diers, relating to "the matter that you [and Houk] are both well aware of from 05/15/2023." (ECF 83-2, ¶ 4; ECF 80, p. 3.) In the email, Diers was informed that "further discussion and/or interference will be a direct violation of the Employee Code of Conduct policy, and may result in Discipline." (ECF 80, p. 3.) This warning prohibited Diers from engaging in "further discussion with other Staff or Clients in any way about this incident." (Id.) Notwithstanding this warning, two inmates (Farr and Shupe) made statements as part of the investigation that Diers submitted. (ECF 70-2, pp. 95–96.) Diers said he did not ask these inmates to write statements on his behalf; their decision to do so was "free will." (Id., pp. 88, 96.) The investigation concluded otherwise. (ECF 80, pp. 6–7; ECF 88, p. 5.)

On May 29, 2023, Inmate Shondel completed a grievance form stating as follows:

> I woke up one morning to eat breakfast and was waiting on pill line when I heard [L]isa the RO. On 12 am- 8am shift talking about R.O. Gerid and Inmate Shoup being romantically [i]nvolved and at one point calls them a couple of gross homosexuals who probably fuck on the night shift off camera. She was vulgar and explicit and I said 'I have no inclination to hear what she was saying' not sure of exact day but she was addressing the new girl R.O. when it happened.

(ECF 84-1, ¶ 8; ECF 83-6.) Shondel later said he felt threatened and forced by Diers to make the statement, and that he wanted to recant. (ECF 71, pp. 17–18.) At the hearing on the summary judgment motions, Diers admitted that Shondel recanted the statement. (Tr.[3] 28:13–17, 29:14–16.)

On or about May 30, 2023, Diers was suspended without pay pending the outcome of the investigation. (ECF 84-1, ¶ 13.) Investigators ultimately concluded that Diers violated the Eighth

---

[3] Citations to "Tr." are to the rough draft of the transcript of the summary judgment hearing on January 27, 2026.

District's Code of Conduct. (ECF 71, pp. 19–20.) Accordingly, the Eighth District terminated Diers's probationary employment on June 27, 2023. (ECF 83-2, ¶¶ 4–5.) Defendant Fell made the decision to terminate Diers's employment due to the violation of work rules, with Defendant Robinson relaying the decision to Diers via phone. (ECF 70-2, pp. 90–91, 100, 104.) Under Eighth District policy, the "[t]ermination of a probationary employee is not subject to appeal." (Id., p. 4.)

## II.    PROCEDURAL BACKGROUND.

On December 7, 2023, Diers sued Defendants in the Iowa District Court for Wapello County. The Eighth District Defendants removed the case to this Court on March 21, 2024. (ECF 1.) In an Order dated July 1, 2024, the Court granted in part and denied in part Defendants' partial motions to dismiss; granted in part and denied in part Diers's motion for leave to amend; and denied Diers's motion to remand. (ECF 29.)

Diers filed a revised and amended complaint on September 13, 2024. (ECF 31.) He brings five claims: Count I, Writ of Certiorari pursuant to Iowa Code § 35C.6, against the State Defendants and Fell and Robinson in their official capacities; Count II, Denial of Due Process (Property Interest) pursuant to 42 U.S.C. § 1983, against the Individual Defendants in their individual capacities; Count III, Denial of Due Process (Liberty Interest) pursuant to 42 U.S.C. § 1983, against the Individual Defendants in their individual capacities; Count IV, Interference with Contract, against Houk and Harbison in their individual capacities; and Count V, Defamation, against Houk in her individual capacity. (Id.) On October 29, 2025, the Eighth District Defendants moved for summary judgment on all Counts. (ECF 70.) The next day, the State Defendants moved for summary judgment as to Count I (the only Count in which they were named). (ECF 74.) Diers resists. (ECF 83.) The Court held a hearing on the motions on January 27, 2026. (ECF 90.)

## III.    LEGAL STANDARDS.

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Smith v. Ashland, Inc.*, 250 F.3d 1167, 1171 (8th Cir. 2001). "A fact is material if it 'might affect the outcome of the suit.'" *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of identifying "the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). Once met, the burden shifts to the nonmoving party to respond with evidentiary materials "showing the presence of a genuine issue for trial," such that "a jury could reasonably find in his favor." *Id*. at 997 (citing *Torgerson*, 643 F.3d at 1042 and *Gibson v. Am. Greetings Corp*., 670 F.3d 844, 853 (8th Cir. 2012)). Doing so requires the nonmovant to show more than "some metaphysical doubt as to the material facts." *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–87 (1986)). The Court may consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," in considering if each party met its burden. *Church v. Anderson*, 249 F. Supp. 3d 963, 969 (N.D. Iowa 2017) (citing Fed. R. Civ. P. 56(c)), *aff'd*, 898 F.3d 830 (8th Cir. 2018). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Gray v. FedEx Ground Package Sys., Inc*., 799 F.3d 995, 999 (8th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000)). "Where the record taken as a whole could lead a rational trier of fact to find for the nonmoving party, there is a genuine issue for trial." *Id*. (citing *Torgerson*, 643 F.3d at 1042).

## IV.    LEGAL ANALYSIS.

### A.  The Court Grants Summary Judgment on the Writ of Certiorari Claim (Count I).

Diers's Writ of Certiorari claim is based on his assertion of rights under the Iowa Veterans Preference Act, Iowa Code Chapter 35C. Broadly, this statute provides that "veterans who are citizens and residents of the United States are entitled to preference in appointment and employment over other applicants of no greater qualifications" for certain positions. Iowa Code § 35C.1. The law further specifies that protected persons holding a "public position by appointment or employment" shall not "be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari . . . ." Iowa Code § 35C.6.

The problem for Diers is that probationary employees are not entitled to the protections of the statute. In *Couch v. Wilkinson*, 939 F.2d 673, 675 (8th Cir. 1991), the Eighth Circuit held that "a probationary employee may be discharged under Iowa law at the discretion of the appointing authority, even if the employee is a veteran within the scope of the Veterans Preference law." The

Eighth Circuit reached this conclusion after analyzing the conflict between the Iowa Veterans Preference Law and Iowa Code § 19A.9(8), which provided for a merit system of personnel administration for Iowa state employees and dictated a six-month probationary period.[4] The court recognized that "[t]he Iowa Supreme Court has held that the Veterans Preference law is a general statute in relation to other statute regulating public employment" and that section 19A.9(8) "is a special and later enacted statute," which makes it controlling. *Id.* at 675. The Eighth Circuit rejected the argument that this interpretation "ignores the legislative intent and makes the Veterans Preference Law meaningless," relying instead on the "the later and more precise expression of legislative intent." *Id.*

*Couch* is binding here. Diers is a veteran. But he was a probationary employee at the Eighth District who was on the job for less than three months at the time of his termination. This is permitted under Iowa law and Eighth District policy. *See* Iowa Code § 8A.413(11) ("If the employee's services are unsatisfactory, the employee shall be dropped from the payroll on or before the expiration of the probation period."); Iowa Admin. Code § 11-58.2 (recognizing that the appointing authority may "discharge an employee during the period of probationary status without right of appeal."); (ECF 70-2, p. 4 (Eighth District New Employee Probation policy)). Due to his probationary status, Diers was not protected from termination or otherwise entitled to Chapter 35C protections. *See Couch*, 939 F.2d at 675 ("[V]eterans who serve as public employees are protected only after completion of a six-month probationary period." (citing *Vislisel v. Univ. of Iowa*, 445 N.W.2d 771, 772–74 (Iowa 1989))).

In urging otherwise, Diers argued: (1) the Veterans Preference law was more recently amended as compared to Iowa Code § 8A.13; (2) *Couch* ignores legislative intent; and (3) there is not a true direct conflict between the statutes such that section 35C.6 controls. (ECF 83-1, pp. 7–9.) Diers also asked the Court to certify the question to the Iowa Supreme Court "so that the Iowa Courts may render its interpretation as to whether [the Veterans Preference law or] probationary law control to the extent there is a conflict." (Id., p. 9.) However, at the hearing, Diers's counsel conceded that *Couch* is controlling precedent and eviscerates Veterans Preference for the first six months of employment. (Tr. 19:23–20:2.) The Court agrees. There is simply no way to interpret *Couch* as permitting his claim to proceed.

---

[4] The Veterans Preference Law was originally enacted in 1904. Section 19A.9(8) was enacted in 1967 and repealed in 2003. *See Couch*, 939 F.2d at 675. Iowa Code § 8A.413(11), enacted in 2003, maintains the mandatory six-month probationary period for state employees.

As for certification, the Iowa Supreme Court "may answer a question certified to [it] when (1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question 'may be determinative of the cause ... pending in the certifying court,' and (4) it appears to the certifying court that there is no controlling Iowa precedent." *Life Invs. Ins. Co. of Am. v. Est. of Corrado*, 838 N.W.2d 640, 643 (Iowa 2013) (quoting Iowa Code § 684A.1). "The decision whether to certify a question to a state supreme court 'is by no means "obligatory" merely because state law is unsettled; the choice instead rests "in the sound discretion of the federal court."'" *Saunders v. Thies*, 38 F.4th 701, 717 (8th Cir. 2022) (quoting *McKesson v. Doe*, 592 U.S. 1, 5 (2020) (per curiam)). "Our system of 'cooperative judicial federalism' presumes federal and state courts alike are competent to apply federal and state law." *Id.* (quoting *McKesson*, 592 U.S. at 5).

The Court declines to certify the question to the Iowa Supreme Court. In *Couch*, 939 F.2d at 675, the Eighth Circuit resolved this very same issue after careful review of Iowa authorities including *Andreano v. Gunter*, 110 N.W.2d 649 (Iowa 1961). There is no reason to believe Iowa courts would now resolve the question any differently. It follows that Diers is not entitled to protection under Chapter 35C. The Court therefore GRANTS summary judgment for the relevant Defendants on Count I.

B. *The Court Grants Summary Judgment on the Section 1983 Due Process Property Interest Claim (Count II).*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person action under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). As relevant here, "[a] government employee is entitled to procedural due process only when he has been deprived of a constitutionally protected property or liberty interest." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994).

In his Amended Complaint, Diers alleged that Defendants' actions "denied [him] a property interest in his continued employment without due process of law." (ECF 31, ¶ 135.) Diers did not, however, have a protected property interest in his probationary employment. *See Couch*, 939 F.2d at 675 ("Since plaintiff had no legitimate expectation of continued employment because he was a probationary employee, his discharge did not deprive him of any property interest protected by the due process clause of the Constitution."). As such, his termination did not deprive

him of any property interest cognizable in a section 1983 action. *See id.*; *see also Lee v. Halford*, 540 N.W.2d 426, 429 (Iowa 1995) ("Because we have determined in the preceding division that plaintiff served at the pleasure of the director of corrections, he is, we believe, not vested with the requisite property interest to maintain an action under § 1983."). Diers admitted as much in the summary judgment hearing. (Tr. 22:9–18 ("I agree with counsel, the problem with the property interest is that it's all based upon whether or not you have a property interest. Currently, under the Eighth Circuit, you don't have a property interest because you're … a probationary employee[.]").) The Court therefore GRANTS summary judgment for the relevant Defendants on Count II.

### C. *The Court Grants Summary Judgment on Counts III, IV, and V.*

#### 1. Diers Cannot Rely on Inadmissible Hearsay to Survive Summary Judgment.

Before addressing the merits of the remaining Counts, the Court must address an evidentiary issue. In his response to the Motion for Summary Judgment on Counts III (Due Process – Liberty Interest), IV (Interference with Contract) and V (Defamation), Diers relies heavily on a written hearsay statement from Shondel to the effect that Houk started or spread a rumor about Diers being involved in a sexual relationship with an inmate. Diers acknowledged in his brief and at the hearing that Shondel has recanted the statement, and thus the only evidence Diers would be able to present is Shondel's signed but unsworn grievance. (ECF 83-1, p. 12; Tr. 25:8–17, 28:13–17; *see also* ECF 84-1, ¶ 8; ECF 83-6.) Accordingly, the Court must start by discussing whether Diers will be able to present this evidence in admissible form at trial. "At summary judgment, the requisite 'genuine dispute,' Fed. R. Civ. P. 56(a), must appear in *admissible* evidence." *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014); *see also JRT, Inc. v. TCBY Sys., Inc.,* 52 F.3d 734, 737 (8th Cir. 1995) (requiring successful summary judgment defense to include more than inadmissible hearsay-based affidavit).

There are two layers of potential hearsay at issue. The first layer is the statement attributed to Houk. Because Houk is a party, her purported out-of-court statement would be admissible against her pursuant to Fed. R. Evid. 801(d)(2)(A). It does not matter that she denies having said it. *See Mandal v. City of New York*, Nos. 02 Civ. 1234, 02 Civ. 1367, 02 Civ 6537, 2006 WL 3405005, at *2 (S.D.N.Y. Nov. 26, 2006) ("A statement qualifies as a party admission even though the party denies having made it, if the statement's proponent provides adequate proof to support a finding that the statement was made by the party." (quoting 5 MacLaughlin, *et al., Weinstein's Evidence* § 801.30[3])); *see also Harder v. Vill. of Forest Park*, No. 05 C 5800, 2008 WL 4542944,

8

at *2 (N.D. Ill. July 18, 2008) ("Contradicting testimony [as to whether the party made the statement] simply raises an issue of fact for the jury.").

The second layer of hearsay is the one that creates an insurmountable problem for Diers. Because Shondel has recanted the statement in his written grievance, Diers cannot present testimony from Shondel as to what he allegedly heard Houk say. Instead, at best, Diers could only "prove" the statement by introducing Shondel's written grievance. But the grievance is an out-of-court statement offered to prove the truth of the matters asserted therein. Fed. R. Evid. 801(c), 802. Diers cannot rely on this type of hearsay evidence to defeat summary judgment. Indeed, in *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001), the Eighth Circuit concluded that unsworn accounts in inmate grievance forms were inadmissible hearsay that could not be considered at the summary judgment stage. Like the plaintiff in *Mays*, Diers "has failed to obtain deposition testimony or affidavits from the inmate[] who gave these unsworn accounts, and thus []he has failed to provide any evidence from these sources that even potentially would be admissible at trial." *Id.* Indeed, Diers is in an even worse position than the plaintiff in *Mays* because there was nothing in the Eighth Circuit's ruling to suggest the inmates had recanted their statements. Here, by contrast, it is undisputed that Shondel has recanted.

In arguing otherwise, Diers suggested at the hearing that the written statement would not necessarily be offered for the truth of the matter asserted, but rather for the effect on the listener. (Tr. 31:1–9.) This argument is dubious on its face, but even if the Court admitted Shondel's written grievance for this narrow purpose it would not solve Diers's problem because he still would not have any *substantive* evidence—i.e., evidence offered for the truth of the matter asserted—that Houk made the statement attributed to her.

Diers also relies, alternatively, on the following quote from a recent decision in the Northern District of Iowa: "Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." *Norambuena v. W. Iowa Tech. Cmty. Coll.*, 773 F. Supp. 3d 628, 639 (N.D. Iowa 2025) (quoting *Corelink v. Phygen, LLC*, No. 4:13-CV-1842, 2014 WL 7140442, at *2 (E.D. Mo. Dec. 12, 2014) and *Anand v. BP W. Coast Products LLC*, 484 F. Supp. 2d 1086, 1092 (C.D. Cal. 2007)). The problem with Diers's position is that *Norambuena* and the cases cited therein dealt with objections to authenticity, not hearsay. Those cases therefore do not help Diers here.

Granted, the quote from *Norambuena* identifies the documents as "admissions of a party opponent." 773 F. Supp. 3d at 639. In context, however, *Norambuena* was clearly not trying to

suggest that any document produced by a party in litigation is automatically admissible against that party under Rule 801(d)(2). Instead, the words "admissions of a party opponent" came verbatim from a footnote in *Anand v. BP West Coast Products LLC*, 484 F. Supp. 2d at 1092, n. 11, which cited *Architectural Iron Workers Loc. No. 63 Welfare Fund v. United Contractors, Inc.*, 46 F. Supp. 2d 769, 772 (N.D. Ill. 1999). In turn, *United Contractors* analyzed authenticity and hearsay separately, concluding, in the circumstances presented there, that the documents were self-authenticating by virtue of having been produced during discovery and not hearsay because they were the "Defendants' own statements." *Id.* Thus, the footnote in *Anand* consolidated two analytically distinct evidentiary issues (authenticity and hearsay) into a single sentence.

The more precise framing of the issue is this: documents produced in response to discovery requests are generally admissible over the producing party's authenticity objections and may constitute admissions of a party opponent in some circumstances. Here, Defendants do not dispute the authenticity of Shondel's statement. The statement is, however, clearly not admissible as a statement by party opponent because Shondel, as an inmate at an IDOC institution, is not a "party opponent." *See Haynes v. White Cnty.*, No. 4:10-CV-529, 2012 WL 460263, at *5 (E.D. Ark. Feb. 13, 2012) (concluding that statements in grievances submitted by an inmate are not statements of party opponent). Nor did Houk or the Eighth District adopt the contents of Shondel's statement as true or otherwise do anything to bring the statement within the scope of Fed. R. Evid. 801(d)(2).

The Court also rejects the argument that Shondel's inmate grievance is admissible as a business record under Rule 803(6). "In order to lay a proper foundation for the admission of evidence under the business records exception to the hearsay rule, the proponent of the evidence must demonstrate that a document has been prepared and kept in the course of a regularly-conducted business activity." *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 626 (8th Cir. 1983). Diers "has not demonstrated how inmates who made grievances were acting 'in the course of a regularly conducted business activity' or how making the grievances was 'a regular practice of that activity.'" *Hill v. Cnty. of Montgomery*, No. 9:14-CV-933, 2020 WL 819225, at *2 (N.D.N.Y. Feb. 19, 2020) (citing Fed. R. Evid. 803(6)(B), (C)). Other courts have concluded that "inmates' statements 'lack[] indicia of trustworthiness' when they 'were under no obligation to provide information," given that "[a] duty to report ... 'has long been recognized as the principal means of establishing the reliability of a hearsay statement' offered under the Business Records Exception." *Id.* (quoting *Abascal v. Fleckenstein*, 820 F.3d 561, 566 (2d Cir. 2016)); *see also Jordan v. Van Winkle*, No. 3:04-CV-647, 2006 WL 2925657, at *3 (N.D. Ind. Oct. 6, 2006)

(concluding unsworn prison grievance forms were not admissible under Rule 803(6) because "[a]lthough the prison system plainly keeps grievances forms received from inmates in the regular course of business, the portion filled out by the inmate is neither made nor reported by a person with a business duty to do so."). This Court agrees. These concerns—especially lack of indicia of trustworthiness—are particularly acute here given that the author of the statement later stated he felt pressured to make it and recanted.

The bottom line is that Shondel's written statement is inadmissible and will not be considered in ruling on the Motion for Summary Judgment. This means that Diers has not offered any admissible evidence that Houk started or circulated the rumor about him engaging in sexual activity with an inmate. For reasons that follow, this is problematic for Diers's claims.

2. The Court Grants Summary Judgment on the Section 1983 Due Process – Liberty Interest Claim (Count III)

Count III is premised on Diers's claim that he "had a liberty interest in his right to protect his reputation from untruthful and unsubstantiated aspersions on his character and professional competence." (ECF 31, ¶ 144.) He claims Defendants' actions—including "denial of a name clearing hearing/post-termination hearing"— deprived him of due process. (Id., ¶¶ 186, 189.) The Court disagrees.

"An 'employee is entitled to procedural due process only when he has been deprived of a constitutionally protected ... liberty interest.'" *Rush v. Perryman*, 579 F.3d 908, 912 (8th Cir. 2009) (quoting *Winegar*, 20 F.3d at 899). "An employee's liberty interests are implicated where the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Id.* (quoting *Winegar*, 20 F.3d at 899). Accusations relating to "dishonesty, immorality, criminality, [or] racism" fit the bill. *Id.* (quoting *Winegar*, 20 F.3d at 899.) "To establish an unconstitutional liberty interest deprivation, the plaintiff must establish that: (1) he was stigmatized by the statements; (2) those statements were made public by the administrators; and (3) he denied the stigmatizing statements." *Id.* at 912–13; *see also Simonson v. Iowa State Univ.*, 603 N.W.2d 557, 564 (Iowa 1999) ("We have said that in order to establish a liberty interest due process claim in connection with termination from employment, the employee must prove the following: 'that the employer published false, stigmatizing charges in connection with the discharge which were denied by the claimant and which seriously damaged the [employee's] employment opportunities or standing and associations in the community, all without notice and opportunity to be heard in a name clearing hearing

11

requested by the [employee].'" (quoting *Bennett v. City of Redfield*, 446 N.W.2d 467, 471 (Iowa 1989))).

There are several reasons why Count III cannot survive, starting with the fact that—as discussed above—Diers has offered no admissible evidence that the rumor was started or circulated at all, let alone that his employer leveled stigmatizing accusations. Moreover, Diers conceded at the hearing that he could not satisfy the element of public disclosure necessary to maintain this claim. (Tr. 23:23–24:3 ("I don't believe anybody has any evidence to show that it was a public statement, other than the fact that Mr. Shondel was told about it, other than – I mean, I don't believe we have any elements for that, and that is a difficulty of this case."). The law supports this concession. *See Simonson*, 603 N.W.2d at 564 (holding that no "public disclosure" existed where the only people who may have heard the statement were not in decision-making positions).

To that end, Diers testified that when Defendant Robinson called to inform him of his termination, Robinson did not mention the rumor or make any comment about Houk or Harbison. (ECF 70-2, p. 91.) Robinson stated only that Diers was being terminated due to violating the "code of conduct." This private conversation with Robinson regarding termination—which Diers does not claim contained the stigmatizing statement—does not constitute public disclosure. *See Simonson*, 603 N.W.2d at 564 ("Liberty interests are not violated by the private disclosure of reasons for discharge from public employment 'when there is no public disclosure of the reasons for the discharge.'" (quoting *Poynton v. Special Sch. Dist. of St. Louis Cnty.*, 949 F. Supp. 1407, 1414 (E.D. Mo. 1996) and *Bishop v. Wood*, 426 U.S. 341, 348 (1976)).

To the extent there was widespread disclosure of the rumor, the disclosure came from *Diers himself.* He testified that "[t]he whole state of Iowa" learned about the rumor when it was printed in a news article covering his lawsuit. (ECF 70-2, p. 94.) This is not sufficient to satisfy the publication requirement. *See Mogard v. City of Milbank*, 932 F.3d 1184, 1191 (8th Cir. 2019) (concluding plaintiff could not meet the publication element where "[t]here [was] no evidence in the record that defendants made official or intentional public statements about [plaintiff's] termination."). The Court therefore GRANTS summary judgment for the relevant Defendants on Count III.

### 3. The Court Grants Summary Judgment on the Interference with Contract Claim (Count IV).

Next, Diers claims that Houk's purported actions—starting and spreading the rumor which resulted in his termination—interfered with his employment contract with IDOC and/or the Eighth District. (Diers conceded that summary judgment should be granted in favor of Harbison on this claim. (ECF 83-1, p. 11; Tr. 3:4–12.)) To prove intentional interference with a contract, a plaintiff must establish: "(1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 399 (Iowa 2001) (quoting *Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 377 (Iowa 1997)).

As to the first element, Houk asserts that Diers's probationary employment did not constitute a "contract with a third-party" necessary to pursue this claim. Houk relies on *Yockey v. State*, 540 N.W.2d 418 (Iowa 1995), wherein the Iowa Supreme Court concluded a probationary state employee could not maintain a claim for breach of contract. *Id.* at 423 ("We nevertheless think the employment here was clearly at-will…. Clearly no contractual protection can be gleaned from this language [regarding six-month probationary status during which time she could be terminated without right of appeal]. Yockey's claim of an implied contract is nothing more than her one-sided hope for continued employment."). Diers counters that he can maintain a claim for intentional interference with a contract even when the contract is terminable at will. *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 601 (Iowa 1999), *as amended on denial of reh'g* (Feb. 4, 2000). Diers has the better position on this point: the absence of a right to assert a breach of contract claim does not necessarily preclude an interference with contract claim. *See Toney v. Casey's Gen. Stores, Inc.*, 460 N.W.2d 849, 851 (Iowa 1990) (describing that, after breach of contract suit was dismissed due to employment-at-will, Iowa Supreme Court reversed dismissal of interference suit, "holding that a third-party may be subjected to liability for interference with an employment-at-will"); *see also McGee v. Nat'l Healthcare Corp.*, No. 4:08-CV1092, 2009 WL 467309, at *3 (E.D. Mo. Feb. 24, 2009) (recognizing that, under Missouri law, "[a]lthough an at-will employee cannot assert a claim for breach of contract, he or she can assert a claim against a third party for tortious interference with his at-will employment").

Accepting that Diers had contract with a third party—albeit terminable at will—the problem for Diers is "that contracts terminable at will are more properly protected as a prospective

business advantage rather than as a contract." *Compiano v. Hawkeye Bank & Tr. of Des Moines*, 588 N.W.2d 462, 464 (Iowa 1999). This means that the plaintiff must meet a higher standard of proof: "plaintiff must prove the defendant acted with the *sole or predominant purpose* to injure or financially destroy the plaintiff." *Id.* (emphasis added). True, Diers's deposition testimony describes his relationship with Houk as "toxic" and the workplace investigation stemmed from an incident involving the two of them. But Diers has offered no evidence that Houk acted with the "sole or predominant purpose to injure or financially destroy him." Speculation or conjecture is not sufficient to meet this heightened level of intent. *See Curry v. P&S Transportation, LLC*, No. 3:23-CV-17, 2025 WL 1189512, at *9 (S.D. Iowa Feb. 25, 2025) ("[S]ummary judgment is appropriate if the plaintiff's tortious interference claim rests on 'surmise, speculation or conjecture' as to the defendant's motive." (quoting *Willey v. Riley*, 541 N.W.2d 521, 527 (Iowa 1995)).

Even if Diers could clear this hurdle, his claim still fails. Again—and as discussed above—Diers offers no admissible evidence that Houk started or spread the rumor in the first place. Diers also provides no evidence that Fell individually or the Eighth District more broadly considered the rumor in the decision to terminate Diers's employment. Moreover, Diers testified that he had no evidence that Houk was involved in investigating him or involved in the decision to terminate his employment. (ECF 70-2, p. 98.) For his part, Fell swore that he was "not aware of rumors involving Diers within [ORCF]" and that "[t]he decision to terminate Diers' probationary employment was not based upon alleged rumor regarding Diers." (Id., pp. 102–03.) Houk averred that she was: "not aware of rumors involving Diers within the [ORCF]"; "did not spread any rumors regarding Diers"; "not involved in making the decision to terminate the probationary employment of Jarrod Diers"; and "did not conduct the investigation of Diers," although she was aware that one was conducted. (Id., p. 108.) Absent any evidence of actual interference or causation, Diers's claim cannot survive. The Court therefore GRANTS summary judgment for the relevant Defendants on Count IV.

### 4.   The Court Grants Summary Judgment on the Defamation Claim (Count V).

Finally, Diers brings a defamation claim against Houk based on his allegations that she started and circulated the rumor. "Generally speaking, defamation is the publication of false statements of fact which tend to harm an individual's reputation." *Bauer v. Brinkman*, 958 N.W.2d 194, 198 (Iowa 2021). To prove a defamation claim, "a plaintiff must show the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Taggart v.*

*Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). "Publication is an essential element of defamation and simply means a communication of statements to one or more third persons." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). "Statements that cannot be reasonably interpreted as stating actual facts about a person are not actionable as defamation." *Bauer*, 958 N.W.2d at 198. "Thus, speech that is considered 'rhetorical hyperbole' and 'vigorous epithet' are nonactionable as defamation." *Id.* "Whether a statement is capable of a defamatory meaning is a question for the court." *Id.*

The Court has already concluded that Diers has no admissible evidence that Houk started or circulated a rumor. Thus, there is nothing to contradict Houk's sworn statements that she did not start or circulate the rumor. Absent evidence that Houk published a statement that was defamatory of and concerning the plaintiff, this claim cannot proceed. The Court therefore GRANTS summary judgment for Houk on Count V.

## V.   CONCLUSION.

The Court GRANTS Defendants' Motions for Summary Judgment. (ECF 70; ECF 74.) The Clerk of Court is directed to enter judgment for Defendants.

**IT IS SO ORDERED.**

Dated: March 23, 2026

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

15